IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRELL LEE-LAMO SUMMERS, | ) |
|             Petitioner, | ) |
| | )  3:23-cv-00318 |
| v. | ) |
| | ) |
| FCI LORETTO WARDEN, | ) |
| | ) |
|             Respondent. | |

## MEMORANDUM ORDER DENYING MOTION TO TRANSFER, ADOPTING REPORT & RECOMMENDATION, AND DENYING PETITION

Before the Court is Petitioner Darrell Lee-Lamo Summers' Petition for Writ of Habeas Corpus, filed while he was incarcerated at FCI Loretto. (ECF No. 2.) Mr. Summers alleges that the Bureau of Prisons ("BOP") acted impermissibly in denying him (or more precisely, stripping him of) forty-one (41) days of good-conduct time credit after he was unable to provide a urine sample for a drug test. Mr. Summers says that he was unable to provide the sample because urine retention was a side effect of a legitimately prescribed medication that he was taking, and he was suffering from the side effects of recent hernia surgery.

The warden of that institution filed a response. (ECF No. 9.) The petition was referred to Magistrate Judge Keith A. Pesto for a Report and Recommendation ("R&R"), which was filed on May 24, 2024. (ECF No. 10.) After seeking and receiving an extension, Mr. Summers filed Objections to the R&R on June 10, 2024. (ECF No. 14.) Mr. Summers then filed a Motion to Transfer Case to the Southern District of Mississippi because he was transferred to FCI Yazoo, located in that judicial district and where it appears he remains resident today. (ECF No. 16.)

The Court has reviewed the R&R, as well as all the papers of record and the Motion to Transfer, and concludes that (1) it retains jurisdiction to rule on the Petition and should do so,

1

and (2) it will adopt the R&R as the Opinion of the Court, after *de novo* review of those matters objected to by the Petitioner, for the following reasons.

I. **Jurisdiction and the Motion to Transfer**

A person in custody of the United States may petition for a writ of habeas corpus under 28 U.S.C. § 2241. Section 2241 is the appropriate vehicle for those who dispute the calculation of their sentence, such as Mr. Summers' challenge to the forfeiture of forty-one (41) days of good-conduct time credit.

Petitions for the writ should be filed naming the incarcerated person's immediate custodian as the respondent, generally the warden of the facility where the petitioner is held. 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). When the petitioner is transferred after filing a petition, the court in which the original petition was filed retains jurisdiction despite the custodial change. *Id.* at 441 ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.") (citing *Ex parte Endo*, 323 U.S. 283 (1944)); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445-46 (3d Cir. 2021).

Here, this Court gained jurisdiction over this proceeding when Mr. Summers correctly named the warden of FCI Loretto as the respondent, because he filed his case while incarcerated there. Despite Mr. Summers' transfer, this Court retains jurisdiction over his case. The Court further concludes that, because an R&R has been filed and is ripe for disposition after Objections were filed by Mr. Summers, it is in the interest of justice and the overall consideration of the matter to adjudicate Mr. Summers' petition rather than transfer his case. *See* 28 U.S.C.

§ 1404(a).

## II. Report & Recommendation

In the R&R, Judge Pesto recommends that this Court deny the petition because the involved Disciplinary Hearing Officer ("DHO") complied with all requirements of due process laid out in *Wolff v. McDonnell*, 418 U.S. 539, 56-67 (1974) in the internal prison disciplinary proceedings in this case. Under that rule, a disciplinary hearing that results in the loss of good-conduct time must provide to the inmate an impartial decision-maker, at least twenty-four hours written notice of the charges, an opportunity to call witnesses or present evidence, assistance from an inmate representative if the charge is complex or the inmate is illiterate, and a written decision describing the relied-upon evidence and the reasons for the disciplinary action. *Id.* Here, Judge Pesto reports that all these procedures appear to have been followed by the DHO in this case, and the record backs up that conclusion.

In a disciplinary hearing, the decision of the disciplinary board must be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 447 (1985). But this standard is not a high bar: "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Judge Pesto reports that the DHO necessarily made a credibility determination regarding Mr. Summers as to the cause of his failure to provide a testing sample, that the DHO chose to rely on the testimony of the paramedic about the import of the relevant medical records, and thus that the DHO met the quite low evidentiary standard of *Hill*, even though Mr. Summers' petition and supporting exhibits cast "more than a little doubt" on the conclusion regarding the cause of his inability to provide a sample. (ECF No. 10, at 3.)

3

Mr. Summers filed four Objections to the Magistrate Judge's Report: first, that the DHO failed to properly consider medical evidence; second, that the DHO improperly weighed the medical evidence based on a paramedic's testimony; third, that the procedural safeguards of *Wolff* were not followed based on the alleged failure to consider medical evidence and Mr. Summers' lack of inmate representation; and fourth, that Judge Pesto failed to properly evaluate Mr. Summers' ADA and other obliquely advanced claims, based on "the broader principles of the ADA and relevant Third Circuit interpretations." (ECF No. 14, at 2-3.) The Court considers each matter objected to *de novo*.

As to the first two Objections, the Court does not disagree with Mr. Summers that the DHO's evaluation and weighing of the evidence could in theory be assessed as having been less than perfect if there were a more generous standard of review applicable in this Court. However, the task before the Court in reviewing the denial of good-conduct time is whether the DHO had "some evidence" that could support their finding; it "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. The exhibits submitted by Mr. Summers do seem to indicate that his failure to provide a urine sample could have been a perfectly legitimate side effect of a prescribed medication, taken as directed. But unless Mr. Summers can show that "the decision [of the DHO] is not supported by any evidence," *id.*, the DHO did not violate his due process rights as laid out by the Supreme Court in reaching the decision here. The DHO did rely on "some evidence" in determining the sanction: they relied on the staff member's testimony that Mr. Summers refused to urinate and the paramedic's testimony that there was no medical reason that Mr. Summers could not provide a urine sample after that paramedic reviewed Mr. Summers' medical records.

4

(ECF No. 2-1, at 4.) While Mr. Summers protests that the paramedic's testimony was inexpert because it was beyond the scope of a paramedic's license, the DHO report credits the testimony of the medically trained and employed person who had seen Mr. Summers' medical records over Mr. Summers' own testimonial report of his own medical history, made by him without supporting documentation. In their written report, the DHO says that they believed that Mr. Summers had greater incentive to lie about the reasons for not providing a sample compared to the reporting staff member. In light of the standard set forth in *Hill*, the DHO's consideration of the assessment of the medical records by the paramedic was not irrational nor so out of bounds as to vitiate any reliance by the DHO on that evidence. Thus, because the DHO relied on "some evidence" that was rationally legitimate for the DHO to consider, their decision is valid even if that evidence would not receive the greater weight before this Court if a more exacting standard of review applied.

The third Objection is that the DHO did not provide adequate procedural protections under *Wolff*. Mr. Summers first objects to the DHO's weighing of evidence, which is addressed above; further, the calculus as to the weight given to evidence is not protected in *Wolff* beyond the requirement that an incarcerated person be allowed to present evidence and a written decision is provided by the DHO that states the evidence relied upon. *Wolff*, 418 U.S. at 563-67. The record indicates that Mr. Summers waived the right to provide witnesses and received a written report of the evidence relied upon and the decision reached at the hearing. (ECF No. 2-1.) Further, there is no right to the assistance of a staff representative when a prisoner is literate and the issues are not complex. *Wolff*, 418 U.S. at 570; *Macia v. Williamson*, 219 F. App'x 229, 233 (3d Cir. 2007). Mr. Summers does not allege that he was illiterate or otherwise had difficulty

5

understanding the charges against him, and the report of the disciplinary hearing indicates he waived the right to a staff representative in any case. (ECF No. 2-1.)

Finally, Mr. Summers says that he faced discrimination for a disability and should have a remedy under the ADA. Mr. Summers' allegations that he is entitled to ADA protections are not particularly specific. In his original Petition, he requests only a "reasonable accommodation" without describing what that accommodation might be, and without referring to the ADA itself, and without identifying the other inmates who have allegedly received such accommodations or their conditions. In his Objections, he says that he informed the DHO of his medical condition, which he says should have prompted a reasonable accommodation by the institution. To the extent there may be an ADA-protected interest implicated in Mr. Summers' petition, there is no duty "to terminate an ongoing disciplinary process based on a *post hoc* request for reasonable accommodation." *Katz v. UPMC*, No. 2:16-cv-1627, 2019 WL 3843041, at *8 (W.D. Pa. Aug 15, 2019). The DHO is not required to terminate its disciplinary process based on Mr. Summers' assertion of a disability unless they were previously aware of such disability and failed to accommodate it.

For the reasons above, it is hereby ordered that the Motion to Transfer (ECF No. 16) is DENIED, the Amended Petition for Writ of Habeas Corpus (ECF No. 2) is DENIED, and the Report and Recommendation of the Magistrate Judge (ECF No. 10) is ADOPTED. The Clerk shall close the case on the docket.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: January 10, 2025